## JOSEPH E. FOXCROFT *versus* DAVID BARNES.

A judgment upon a verdict, rendered in favor of petitioners for partition against persons unknown, is conclusive, so far as concerns the rights of those who did not appear and become parties to the proceedings, although the finding of the jury did not conform to the issue and by inadvertence was not written out in form, before it was affirmed.

A judgment establishing the partition of lands bars the legal possessory title of all who did become or might have become respondents.

Disseizin, in order to defeat the operation of the proprietor's deed, must be by occupancy of a part under a deed of conveyance recorded, or such an open and visible occupancy, that the proprietor may at once be presumed to know the extent of the disseizor's claim and occupation.

An occupation according to the provisions of stat. 1821, c. 62, § 6, or R. S. c. 147, § 11, does not constitute such a disseizin as would prevent the owner from conveying his land, although, if continued 20 years, it might bar a writ of entry, brought by the owner for possession.

WRIT OF ENTRY. Trial before SHEPLEY, J. The general issue was pleaded with claim for betterments.

The verdict was for the demandant. The jury having allowed the betterments, and fixed the amount thereof, the questions considered by the Court related only to the title.

*A. W. Paine*, for tenant.

All the deeds under which the demandant claims were made while the grantors were disseized. Such deeds could convey nothing.

The R. S. c. 91, § 1, cannot aid him. It was wholly prospective. Its language is, "*shall*" make a deed. If otherwise, it would have been unconstitutional. 2 Gall. 141. The

grantor of demandant's grantor, when making the deed, was disseized. Therefore no right of entry passed.

The demandant's reliance must be upon the partition alone. But that was invalid because of the defect in the proceedings. That defect was a fatal one. The verdict did not approach the issue. The issue was sole seizin ; the verdict was that one of the former conveyances was fraudulent, whereupon partition was ordered. 1 Story's R. 174, S. C. in C. C. U. S. and afterwards in Sup. Court U. States. The judgment, on its face, is invalid, as to all persons, without a reversal. Before the R. S. the right of entry only was tried, now the right to the land must be settled in process for partition. Rev. Stat. chap. 145, creates a new rule. The process combines the character of a writ of entry with that of a writ of right. But when the judgment in question was rendered, it operated on the possession, and it is no bar as to the right. In the same case, 4 Howard, 352, these partition proceedings were not even insisted upon. The ·demandant's deed was void ; could it control a title by 15 years possession ?

*Kelley,* for demandant.

Our title is good with or without the partition. Long before the tenant's possessory title began, we had title by recorded deeds. It is said some one had disseized. But the law on that point only related to the remedy ; it only raised a question whether the suit should be in name of the grantor or grantee. We had good title under the partition. The case cited from 1 Story's R. was on the former statute. Then the judgment in partition could be overhauled by writ of right. The tenant's possessory title had commenced but two years before the proceedings in partition. No right could then have accrued. At all events the judgment is effectual until reversed.

SHEPLEY, J. — The demandant claims by a writ of entry to recover the westerly half of lot numbered twelve in the fifth range in the township of Lee. Samuel T. Mallett conveyed in mortgage on June 5, 1827, to the trustees of Williams College, six thousand acres, in common and undivided in that

township. The trustees of the college, conveyed the same on May 11, 1835, to John Webber. Nathaniel Ingersoll conveyed all his interest in that township to John Webber on July 19, 1833. John Webber on June 19, 1835, conveyed one-half of the lands which he had purchased of Nathaniel Ingersoll, and of the trustees of that college, to the demandant. John Webber and the demandant presented their petition for partition against persons unknown to have the lands owned by them in that township, set out to them to be held in severalty. Several persons appeared and a trial was had in this Court upon an issue joined, and a verdict was found in favor of the petitioners, but the finding of the jury did not conform to the issue, and through some inadvertence, it was not written out in form, before it was affirmed. The judgment founded upon it may be erroneous or inoperative upon the rights of those, who were parties in that issue ; but the judgment that partition be made, and the final judgment establishing the partition as made cannot thereby be affected, so far as it concerns the rights of other persons, who did not appear and become parties to those proceedings.

Neither the tenant nor any person, from whom he claims to have derived title, became a party to those proceedings. The final judgment was entered at the June Term of this Court in this county, in the year 1839, and lot numbered twelve in the fifth range, was set out to the petitioners, as a part of their share.

This Court has decided, that "the judgment establishing the partition completely bars the legal possessory title of the respondent and of all others, who might have become respondents." *Baylies* v. *Bussey*, 5 Greenl. 159. Any person claiming to be the owner of lot numbered twelve in the fifth range might have become a respondent, and thus have protected his rights, if any he had. The statute approved on February 8, 1821, c. 37, § 2, under which this partition was made, declares, that the partition or division, so made, accepted and recorded, "shall be valid and effectual to all intents and purposes."

Pending the proceedings in partition, John Webber, on Nov.

4, 1836, conveyed to the demandant by deed of release, all the lands owned by him in the township of Lee, excepting one-eighth part of the lands set off on execution against Nathaniel Ingersoll. It does not appear, that the premises demanded, constituted any portion of the land set off on execution against Ingersoll. If the demandant be required to proceed further and to prove, that he has extinguished all the rights of John Webber, remaining unconveyed or acquired by the proceedings and judgment in partition, he shews, that he had done so by two deeds of release made by Webber to himself, the first on June 16, 1840, and the second on August 13, 1843. The counsel for the tenant insists, that these conveyances were inoperative, because John Webber was disseized, when they were made. The effect of the argument is, that the operation of a deed to convey title may be defeated, when the land of the grantor is occupied by another person according to the provisions of the statute of 1821, c. 62, § 6, or the provisions of the Revised Statute, c. 147, § 11. And this is the basis of the requested instruction which was refused.

The rule of the common law, that the owner of lands, who has been disseized cannot convey them, becomes applicable only, when a disseizin is proved, according to the rules of the common law, which can know no other disseizin, than one established according to its own rules. What constitutes a disseizin according to the common law, as received in this State, was decided in the case of the *Proprietors of the Kennebec Purchase* v. *Laboree*, 2 Greenl. 275. It must be an occupancy of a part under a deed of conveyance recorded, or "such an open and visible occupancy, that the proprietor may at once be presumed to know the extent of the claim and occupation of him, who has intruded himself unlawfully into his lands, with an intent to obtain a title to them by wrong." In this case all pretence to such a disseizin is disproved, except to a small portion of the premises demanded. And neither the defence, the requested instruction, nor the argument, makes any distinction between such small portion and the remaining portion of the demanded premises. It cannot be admitted, that an occupation

according to the provisions of those statutes, would constitute such a disseizin as would prevent the owner from conveying his lands.   It was no part of the object of their enactment to defeat the operation of such a deed of conveyance.   There is no allusion to it found in them.   Their object was to · limit or restrict the right of the owner of lands to recover them of one, who had occupied them in the manner therein described, for twenty years.   Courts would be wholly unauthorized to extend their provisions by construction, so as to embrace another and distinct subject, not noticed or alluded to in them.

The conveyances to the demandant being operative, his title to the demanded premises becomes established, and the instructions to the jury to that effect were correct.

The title exhibited by the tenant, commenced in the year 1833 or 1834, by the entry of Moses Thurlo upon a portion of the demanded premises.   He cut down the trees then standing upon some acres of the land, and put up a frame for a house. William True, who succeeded him, made a conveyance of the premises on October 11, 1834, to James L. Thomas, but this deed was not recorded until November 11, 1846.   Thomas conveyed the same to the tenant on May 15, 1841, by a deed· not recorded till October 30, 1847.   The case states, that the house on the premises had been finished, and that other improvements had been made, but that no more than a few acres of the land had at any time been enclosed.   The tenant therefore could obtain no title to the premises under the statute of 1821, c. 62, or under the R. S. c. 147, during the time of such occupation ; and it becomes unnecessary to consider the construction and effect of the R. S. c. 145, abolishing writs of right and authorizing the recovery of lands by a writ of entry only.   Nor is it necessary to consider or determine, what effect the R. S. c. 121, § 31 and 33, might have had, if the demandant had relied upon the proceedings and judgment in partition without exhibiting any other title.   The instructions given being correct, and those requested properly refused, the entry must be                         *Judgment on the verdict.*